### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 03 B 39826 |
| | ) | Chapter 13 |
| KIMBERLE A. ANDREAS, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | _____ |
| | ) | |
| IN RE: | ) | Bankruptcy No. 04 B 37642 |
| | ) | Chapter 13 |
| IRENE CEGIN, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |

### MEMORANDUM OPINION

These matters come before the Court on the motions of Glenn B. Stearns, the Chapter 13 Standing Trustee (the "Trustee") for both Kimberle A. Andreas and Irene Cegin (collectively the "Debtors"), against Susan G. Castagnoli ("Ms. Castagnoli"), as attorney for the Debtors, for relief under 11 U.S.C. §§ 329 and 330 and Federal Rules of Bankruptcy Procedure 2017, 9020, and 9024 to examine the attorney's fees received by Ms. Castagnoli in these cases; for disgorgement of those fees; to find Ms. Castagnoli in contempt of Court for receiving unauthorized fees incidental to refinancing transactions; for the award of costs and attorney's fees incurred by the Trustee in these matters; and for fines to be imposed upon Ms. Castagnoli.

For the reasons set forth herein, the Court grants the Trustee's motions in part and overrules the objections asserted by Ms. Castagnoli. The Court finds that Ms. Castagnoli received excessive and unauthorized fees in the cases of Kimberle A. Andreas and Irene Cegin in the sums of $3,500.00 and $5,262.21, respectively. The Court orders those amounts disgorged by Ms.

Castagnoli and repaid forthwith to the Debtors. The Court further finds Ms. Castagnoli in civil contempt of the Court's orders allowing Ms. Castagnoli fees of only $2,700.00 in each case. In addition, the Trustee shall be awarded his taxable costs and reasonable attorney's fees. The Trustee shall submit applications for these fees and costs within thirty days hereof. Ms. Castagnoli may file any objections thereto within fourteen days thereafter. The Court will thereafter set a status hearing on the requested costs and attorney's fees as well as the Trustee's request for the imposition of fines upon Ms. Castagnoli.

As a result of Ms. Castagnoli's misconduct found here, the Court refers these matters to the United States Attorney for the Northern District of Illinois pursuant to 18 U.S.C. § 3057, to the Chief Judge of the United States District Court for the Northern District of Illinois pursuant to LR83.28 of the Local Rules of the United States District Court for the Northern District of Illinois for referral to the Executive Committee, and to the Attorney Registration and Disciplinary Commission of the Supreme Court of the State of Illinois pursuant to Illinois Supreme Court Rule 751 *et seq.* for such disciplinary action and further investigation as they deem appropriate.


## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They constitute core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O).

-3-

## II. <u>FACTS AND BACKGROUND</u>

These cases involve similar facts and common issues of law and have been consolidated for trial. Most of the material facts are undisputed. A brief summary of the relevant portions of the case dockets places the matters at bar in context.

Ms. Andreas testified at the trial held in these matters. The Court finds her testimony credible. She met with Ms. Castagnoli at her law office in September of 2003 and retained her to file a Chapter 13 bankruptcy case because Ms. Andreas was struggling financially. Ms. Andreas was facing foreclosure on her home as a single mother with two minor children to support. She was owed over $30,000.00 in back child support, suffered a pay cut from a job change, and was fighting to survive cancer. Ms. Andreas reviewed and signed the flat fee arrangement using the Model Retention Agreement wherein Ms. Castagnoli agreed to perform all services in connection with the case through case closing for the total fee of $2,700.00, plus costs and expenses. (Trustee Ex. No. 1.) Ms. Andreas testified that she did not hire Ms. Castagnoli for any other legal work.

Ms. Andreas' petition and plan were filed on September 29, 2003. The plan was subsequently confirmed on November 21, 2003. Ms. Castagnoli applied for allowance of the agreed $2,700.00 fee which the Court approved on December 16, 2003. Significantly, Ms. Castagnoli did not request or apply for any additional fees.

Ms. Andreas further testified that in 2005 Ms. Castagnoli contacted her about refinancing her home mortgage on more favorable terms and recommended a mortgage brokerage firm to assist in the process. This process took several months. During this period Ms. Castagnoli did not mention any additional fees for such services. Ms. Castagnoli filed a motion to refinance,

-4-

which was approved by the Court. The refinancing closed in August of 2005. At the closing, Ms. Andreas was given a stack of documents to review and sign at Ms. Castagnoli's law office. She did not notice the additional fee of $3,500.00 allocated to Ms. Castagnoli on the closing statement. (Trustee Ex. No. 8, p. 2, line 1107.) The refinancing aided in the completion and consummation of Ms. Andreas' plan. She received her discharge in February 2006, and after the Trustee's final report had been filed and approved, the case was closed in September 2006.

Ms. Andreas testified that representatives of the Federal Bureau of Investigation contacted her in June of 2006. To her surprise and embarrassment, Ms. Castagnoli's $3,500.00 fee referenced on the refinancing closing statement was brought to her attention for the first time, notwithstanding that she had signed that document. Ms. Andreas was adamant that the only fee she agreed to pay Ms. Castagnoli was the sum of $2,700.00 under the flat fee agreement. Ms. Andreas acknowledged at trial that Ms. Castagnoli performed the contracted legal services to her satisfaction.

Although Irene Cegin did not testify at trial, the documentary evidence shows a similar pattern of events. Ms. Cegin's Chapter 13 petition and plan were filed on October 9, 2004. Ms. Castagnoli was her attorney of record. Ms. Castagnoli utilized the flat fee arrangement with Ms. Cegin whereby she would receive a fee of $2,700.00 for all legal services rendered to Ms. Cegin through case closing. An amended plan was filed and confirmed, and the requested $2,700.00 fee was approved and allowed on February 4, 2005. Thereafter in June 2005, Ms. Cegin, through motion filed by Ms. Castagnoli, requested authority to refinance her real estate. The Court granted that motion on July 15, 2005. Ms. Castagnoli did not request or apply for any additional fees in connection with the refinancing efforts. The balance of the confirmed plan was paid off,

-5-

presumably through the refinancing proceeds, and Ms. Cegin received her discharge on May 2, 2006. After the Trustee's final report was filed on July 18, 2006, the case was closed.

The instant motion in Ms. Cegin's case was filed on October 24, 2006, and the motion in Ms. Andreas' case was filed on November 10, 2006. The motions are similar and initially requested that the Court enter orders reopening both cases under 11 U.S.C. § 350(b) and Federal Rule of Bankruptcy Procedure 5010. Orders were entered reopening the cases on November 17, 2006 and December 1, 2006, respectively. Subsequently, Ms. Castagnoli filed motions to strike and dismiss the instant motions of the Trustee. Ms. Castagnoli's motions to strike were denied after argument and hearing. Ms. Castagnoli then attempted to prosecute interlocutory appeals to the District Court. This Court denied Ms. Castagnoli's motions to stay pending appeal and set the balance of the relief sought for evidentiary hearing. The motions at bar were consolidated for hearing because of the unusual and extremely serious nature of the similar allegations raised by the Trustee against Ms. Castagnoli.

The Trustee alleges that he issued plan payoff letters incidental to the Debtors' refinancing efforts and requests made by Ms. Castagnoli. Ms. Castagnoli sent to the Trustee copies of only the first pages of the closing statements issued on the refinance transactions and copies of the payoff checks for the balances of the plans per the Trustee's payoff letters. The Trustee alleges that in May 2006, he became aware that Ms. Castagnoli had obtained refinancing for another Chapter 13 debtor and, after a trial, was found to have fraudulently altered the Trustee's payoff letter as part of a scheme to collect additional unauthorized attorney's fees. *See In re Olsen*, No. 04 B 42333, slip op. (Bankr. N.D. Ill. Aug. 28, 2006). As a result, the Trustee commenced an investigation of other Chapter 13 cases that involved Ms. Castagnoli and refinancing, including

-6-

the two cases at bar. After obtaining complete copies of the closing statements in those matters, the Trustee contends that in seventeen cases, Ms. Castagnoli received additional attorney's fees incidental to the refinancing transactions. Ms. Castagnoli did not disclose these fees to the Trustee or the Court, nor did she file any fee applications or obtain any orders approving the fees.

The Trustee further alleges that in Ms. Cegin's case the additional undisclosed and unauthorized fee paid to Ms. Castagnoli was $5,262.21, and in Ms. Andreas' case the additional undisclosed and unauthorized fee paid was $3,500.00. Moreover, by furnishing the Trustee with only the first pages of the closing statements and not the second pages, which detailed the additional fees, Ms. Castagnoli kept her receipt of the fees hidden from the Trustee and the Court in violation of the Court's orders that allowed her only $2,700.00 for all legal services rendered to the Debtors. Thus, the Trustee contends that Ms. Castagnoli's actions constitute bad faith and fraud, thereby justifying disgorgement of the fees, finding her in contempt of the Court, and subjecting her to fines and sanctions. Additionally, the Trustee requests that he be awarded his costs and reasonable attorney's fees.

The only other witness who testified at trial was the Trustee. His testimony was credible and included the explanation of his office procedures incidental to plan payoffs through refinancing transactions. On request for plan payoffs, the Trustee and his staff audit the records and review the confirmed plan, payouts made to date, and claims on file. Once a refinance closes, closing statements are sent from the debtor or her agent to the Trustee and plan payoff checks are sent from the escrow agent handling the closing to the Trustee's lock box agent, who in turn, furnishes the payment to the Trustee. In the cases at bar, Ms. Castagnoli sent only page one of the closing statements to the Trustee. (Trustee Ex. Nos. 7.) The other pages of the closing

-7-

statements were not included. (*Id.*) The Trustee testified that he obtained those missing pages in May 2006 from an attorney for the lender upon his request after he learned of the facts in the *Olsen* case. (Trustee Group Ex. Nos. 10.) The Trustee discovered that Ms. Castagnoli had been paid the additional undisclosed fees of $5,262.21 in Ms. Cegin's case and $3,500.00 in Ms. Andreas' case. (Trustee Ex. Nos. 8, p. 2 line 1107) The Trustee reviewed his files and the Court files and determined that none of the additional fees had been applied for or approved. He performed a similar review and audit of the other Chapter 13 cases that involved refinancing efforts by Ms. Castagnoli for other debtors and prepared a spreadsheet detailing his findings. (Trustee Ex. Nos. 9.) The Trustee thereafter notified the United States Trustee of his findings and proceeded with the motions at bar as well as other motions before other judges of this bankruptcy court. The Trustee testified that he has not encountered similar conduct by another attorney and, thus, has not performed a like investigation during his tenure.

Ms. Castagnoli did not testify. Rather, through her attorney, she asserted her Fifth Amendment privilege against self-incrimination. The only documentary evidence adduced and offered by Ms. Castagnoli was certified copies of various papers and pleadings filed in state court proceedings against the Debtors. The Court questions the significance of these exhibits because they were not specifically addressed at trial. After hearing closing arguments, the Court took the matters under advisement.

-8-

## III. DISCUSSION

A.    **Recent Developments in Chapter 13 Bankruptcy Practice**

The matters at bar involve two somewhat recent developments in the past few years in the

Chapter 13 bankruptcy practice in this District: refinancing of debtors' homes at (hopefully) lower

interest rates with the use of the proceeds to pay off the remaining plan balance (or substantially

reduce same) and use of the flat fee arrangement in the Model Retention Agreement between

Chapter 13 debtors' attorneys and their clients to otherwise avoid the mandate of Federal Rule of

Bankruptcy Procedure 2016(a) which requires the itemization of all the time and services spent

in a case before the Court can allow a reasonable fee to be paid.

The first development began to occur when the home mortgage housing market offered

substantially lower interest rates on mortgage refinancings.  Chapter 13 debtors took advantage

of those lower rates in order to lower their monthly mortgage payments and pay off their

confirmed plans early.  The increase in real estate values in this District helped to enhance the

prospects for many homeowners to save substantial sums in the long run by refinancing at lower

interest rates.  Chapter 13 debtors are among those who hopped on the refinancing bandwagon.

The other recent development in Chapter 13 practice in this District is the flat fee

arrangement.  Use of a flat fee arrangement began after the Seventh Circuit held that it is proper

under 11 U.S.C. § 329(b) to establish a presumptive "reasonable value" of legal fees in consumer

bankruptcies, and to limit fees to this level unless counsel establishes that services in a particular

case justify more.  *In re Geraci*, 138 F.3d 314 (7th Cir. 1998).  After this case was decided,

representatives of the Chapter 13 bar for debtors and creditors, the Chapter 13 Standing Trustees,

the United States Trustee, and members of this Court, including the undersigned, met and

-9-

conferred at a number of public meetings regarding what developed and evolved into the optional Model Retention Agreement, which has been available for use in its various iterations for a number of years.

The flat fee arrangement in the Model Retention Agreement is not required, and attorneys and their clients are free to adopt and enter into other types of fee agreements. If they opt for some other arrangement, the mandate of Bankruptcy Rule 2016(a) requires the attorney to itemize all time and services rendered as part of the fee application process for award and allowance of fees under 11 U.S.C. §§ 330 and 331. Not surprisingly, more and more members of the bar opt for the flat fee arrangement. This type of arrangement avoids itemization of time and tends to streamline the fee application process, especially when the attorney handles a large volume of cases involving similar scenarios. Standardized procedures and practices for these cases promote efficiency and conservation of time and effort with a higher profit and productivity for the attorney and a less expensive and better result for the client.

**B.    Whether Ms. Castagnoli Violated 11 U.S.C. § 329(a) and Federal Rule of Bankruptcy Procedure 2016(b)**

Section 329(b) and Bankruptcy Rule 2017 authorize the Court to assess the reasonable value of the services Ms. Castagnoli provided to the Debtors and compare that value with the amounts the Debtors paid Ms. Castagnoli for those services. The only fees disclosed to the Court and the Trustee prior to the instant allegations were the $2,700.00 sums for all matters "arising in the case unless otherwise ordered by the court" as provided in the Model Retention Agreements. (Trustee Ex. Nos. 1, p. 4.) Section 329(b) effectively allows the Court to determine whether the fees charged are excessive and, if so, the Court may cancel any compensation

-10-

agreement between the attorney and the client, or it may order the return of the excessive portion

of the fees to the debtor's estate or to the entity that made the payment. *See In re Wiredyne, Inc.*,

3 F.3d 1125, 1127 (7th Cir. 1993). In making this determination, the Court is to be guided by §

330 which sets forth a number of factors that Congress found relevant to an assessment of the

value of the services. *Id.* at 1128. "Once a question has been raised about the reasonableness of

the attorney's fee under [§] 329, it is the attorney [herself] who bears the burden of establishing

that the fee is reasonable." *Geraci*, 138 F.3d at 318. The legislative history for § 329 notes that

"[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection

provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney,

and should be subject to careful scrutiny." H.R. REP. NO. 95-595, at 329 (1977), *reprinted in*

1978 U.S.C.C.A.N. 5787, 6285.

Section 329(a) requires an attorney representing a debtor to "file with the court a statement

of the compensation paid or agreed to be paid . . . and the source of such compensation." 11

U.S.C. § 329(a). Bankruptcy Rule 2016(b) establishes when the statement is to be filed and

includes a provision requiring such disclosure "after any payment or agreement not previously

disclosed." FED. R. BANKR. P. 2016(b). Fee disclosure under § 329 and the Rules is mandatory,

not permissive. *In re Whaley*, 282 B.R. 38, 41 (Bankr. M.D. Fla. 2002). Timely disclosure under

§ 329 and Bankruptcy Rule 2016(b) is central to the integrity of the bankruptcy process. *In re*

*TJN, Inc.*, 194 B.R. 400, 403 (Bankr. D.S.C. 1996). Failure to disclose (in this case fully disclose)

is sanctionable and can include partial or total denial of compensation, as well as partial or total

disgorgement of fees already paid. *See In re Prod. Assocs., Ltd.*, 264 B.R. 180, 186, 189 (Bankr.

N.D. Ill. 2001). The extent to which compensation should be denied rests with the court's sound

-11-

discretion. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995). Many courts, perhaps the majority, punish defective disclosure by denying all compensation. *See, e.g., Park-Helena*, 63 F.3d at 882; *Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.)*, 4 F.3d 1556, 1566 (10th Cir. 1993); *In re Griffin*, 313 B.R. 757, 764 (Bankr. N.D. Ill. 2004).

The Court has considered the factors stated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which are often discussed when reviewing the reasonableness of fees. *See, e.g., In re Singa*, No. 96 B 12034, 1997 WL 400724, at *4 (Bankr. N.D. Ill. June 9, 1997). Inasmuch as Ms. Castagnoli has offered no justification for the additional and unauthorized fees, same are found to be excessive and unreasonable. The Trustee has proved by clear and convincing evidence the patent violations of § 329(a) and Bankruptcy Rule 2016(b) by Ms. Castagnoli regarding the undisclosed additional fees of $3,500.00 in the Andreas case and $5,262.21 in the Cegin case. The Court finds those fees blatantly excessive for the work performed in connection with the refinancing. Ms. Castagnoli could have applied for additional fees under the terms of the Model Retention Agreement, but did not.

Although the case law supports a denial of all compensation for such violations, including the $2,700.00 that each Debtor agreed to pay to Ms. Castagnoli, such a result seems unduly harsh and would provide the Debtors with a windfall. After all, Ms. Castagnoli did achieve successful results for the Debtors, including the benefits of the automatic stay, the refinancings, the payoffs and consummation of the confirmed plans, and the Chapter 13 discharges. These attendant benefits were well worth the $2,700.00 fee each Debtor paid to Ms. Castagnoli. Thus, the Court orders Ms. Castagnoli to disgorge the unauthorized and undisclosed excessive amounts of

-12-

$3,500.00 and $5,262.21 she received from Ms. Andreas and Ms. Cegin, and return those sums to the Debtors.

## C.    Whether Ms. Castagnoli Should be Held in Civil Contempt

Turning to the other principal relief sought in the motions at bar requires consideration of whether Ms. Castagnoli is in civil contempt of the fee orders that were entered in the Debtors' cases. The orders allowed only the $2,700.00 in flat fees under the Model Retention Agreements.

Federal Rule of Bankruptcy Procedure 9020 specifically provides for contempt proceedings. Local Bankruptcy Rule 9020-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, provides the appropriate procedure for commencing civil contempt proceedings. Local Bankr. R. 9020-1. In addition, § 105 of the Bankruptcy Code codifies the contempt power of the bankruptcy courts and provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Indeed, "[s]ection 105 grants broad powers to bankruptcy courts to implement the provisions of Title 11 and to prevent abuse of the bankruptcy process." *In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997).

"The power of contempt is inherent in all courts, as the ability to enforce orders . . . is essential to the orderly administration of justice." *Paloian v. Grupo Serla S.A. de C.V. (In re GGSI Liquidation Inc.)*, 351 B.R. 529, 585 (Bankr. N.D. Ill. 2006), *amended*, 355 B.R. 691 (Bankr. N.D. Ill. 2006). Bankruptcy courts can impose sanctions and make findings of civil

-13-

contempt. *See, e.g., In re Hancock*, 192 F.3d 1083 (7th Cir. 1999); *In re Maurice*, 69 F.3d 830 (7th

Cir. 1995).

The purpose of civil contempt proceedings "is to secure compliance with a prior court

order." *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 91 F.3d 914, 920 (7th Cir. 1996). The

power of a court to find one in civil contempt rests in its inherent limited authority to ensure

judicial proceedings are conducted in an orderly manner. *Jones v. Lincoln Elec. Co.*, 188 F.3d

709, 737 (7th Cir. 1999). "Courts have inherent and statutory powers to punish a party that fails

to comply with the terms of their orders, and to coerce compliance with such orders." *Baldwin*

*Piano, Inc. v. Deutsche Wurlitzer*, GMBH, No. 03 C 2105, 2004 WL 1323940, at *1 (N.D. Ill.

June 15, 2004).

"In order to prevail on a contempt petition, the complaining party must demonstrate by

clear and convincing evidence that the respondent has violated the express and unequivocal

command of a *court order*." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993).

*See also In re Ryan*, 100 B.R. 411, 417 (Bankr. N.D. Ill. 1989). Without a court order specifying

what must be done there can be no civil contempt. *In re Rimsat, Ltd.*, 208 B.R. 910, 913 (Bankr.

N.D. Ind. 1997). Violation of the court order does not have to be "willful" to find a party in

contempt. *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989). Rather, it must be found

that the offending party knowingly violated a specific court order. *In re Johnson*, 148 B.R. 532,

538 (Bankr. N.D. Ill. 1992). A party may be found in contempt if she has not been "reasonably

diligent and energetic in attempting to accomplish what was ordered." *Stotler*, 870 F.2d at 1163.

The Court finds that the clear and convincing weight of the evidence establishes that Ms.

Castagnoli, a knowledgeable and very experienced Chapter 13 practitioner who has represented

-14-

many debtors before this Court for over twenty years, knowingly and willfully violated the fee orders entered in the Debtors' cases. Those orders allowed only $2,700.00 for the legal services provided by Ms. Castagnoli to the Debtors. In violation of those orders, Ms. Castagnoli orchestrated and covered up the receipt of the additional unauthorized and flagrantly excessive fees. She offered no documentary or testimonial evidence to explain or justify her actions in both overcharging the Debtors in violation of the terms of the Model Retention Agreements and then concealing same. The evidence also convincingly indicates that these actions were not isolated incidents or oversights on Ms. Castagnoli's part. Rather, her conduct was part of an ongoing pattern and fraudulent scheme to obtain additional unauthorized fees from a number of her clients using this modus operandi. These actions constitute conduct unbecoming of any officer of the Court and warrant referrals to the appropriate authorities for disciplinary action (disbarment is hereby recommended) and possible prosecution for criminal contempt and bankruptcy crimes.

**D.      Ms. Castagnoli's Invocation of the Fifth Amendment**

Ms. Castagnoli understandably invoked the Fifth Amendment privilege against self-incrimination. The Fifth Amendment privilege protects the person asserting the privilege from compelled self-incrimination. *See, e.g., United States v. Doe*, 465 U.S. 605, 610 (1984); *Fisher v. United States*, 425 U.S. 391, 396 (1976). The privilege shields against disclosure of information that could lead to the imposition of formal criminal liability. *Cont'l Baking Co. v. Sacchetta*, No. 91 C 7930, 1992 WL 350656, at * 3 (N.D. Ill. Nov. 24, 1992). A valid assertion of the privilege does not require the pendency of criminal proceedings. *In re Folding Carton Antitrust Litig.*, 609 F.2d 867, 872 (7th Cir. 1979). Moreover, the privilege can be raised in civil proceedings. *Kastigar v. United States*, 406 U.S. 441, 444 (1972).

-15-

"The Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also Harris v. City of Chi.*, 266 F.3d 750, 753 (7th Cir. 2001) (*citing LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) ("The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own. . . .")). Hence, a civil party's silence may be used against her, even if that silence is an exercise of her constitutional privilege against self-incrimination. *Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 929 (7th Cir. 1983).

The Court construes Ms. Castagnoli's silence and invocation of the Fifth Amendment as an admission of her awareness that her actions violated the Code, the Rules, and the fee orders, and may evidence a pattern of criminal behavior consisting of criminal contempt and fraud among other federal crimes.

**E.    Ms. Castagnoli's Response to the Motions**

Rather than defend on the merits, Ms. Castagnoli raises a number of arguments in the nature of attacks on the Model Retention Agreement; attacks on the Trustee for his alleged lack of authority to investigate these matters after the cases were closed; the lack of any need for Ms. Castagnoli to seek approval for the additional fees; and a laches defense asserting unwarranted delay and prejudice. The Court rejects all of these arguments for the following reasons.

It is undisputed that Ms. Castagnoli is an experienced Chapter 13 practitioner who has represented many debtors in numerous cases in this District for over twenty years. Moreover, the Model Retention Agreements were entered into by Ms. Castagnoli and the Debtors whereby the

-16-

Debtors agreed to pay Ms. Castagnoli the flat fee of $2,700.00 for providing legal services

through the end of the cases. Pursuant to the Model Retention Agreements, an attorney agrees

to provide the following services to the client: "[p]repare, file, and serve necessary motions to

. . . incur debt . . . [and] [p]rovide any other legal services necessary for the administration of the

case before the bankruptcy court." (Trustee Ex. Nos. 1, ¶¶ 11 & 16.) Moreover, Option B in the

Model Retention Agreements, which was used in these cases, specifically provides that "[i]n

extraordinary circumstances, such as extended evidentiary hearings or appeals, the attorney may

apply to the court for additional compensation for these services." (*Id.* p. 4.)

The Court rejects as disingenuous Ms. Castagnoli's argument that the Model Retention

Agreements are vague and ambiguous. Further, her contention that the work she performed was

entirely outside the scope of the Agreements and unrelated to the bankruptcy cases is specious,

unfounded, and therefore rejected. The authority to incur new debt to pay off the plan was listed

in the Model Retention Agreements among the services Ms. Castagnoli agreed to provide as part

of the flat fee arrangement. Ms. Castagnoli is not a neophyte. Rather, she is an experienced

practitioner. Her argument that the services she provided to the Debtors were outside the scope

of the Model Retention Agreements fails miserably.

Equally unavailing is the unsupported argument that the Trustee lacked authority to

investigate the sordid facts of these matters and the appalling conduct engaged in by Ms.

Castagnoli. She bilked the Debtors–her own clients–out of the excessive and unauthorized fees

and for a time successfully covered up and concealed this from the Trustee and the Court. After

all, the Court only learned of the allegations after the cases were closed and the instant motions

were filed.

-17-

Further, the Court rejects Ms. Castagnoli's argument that the Trustee lacks authority to investigate because the cases were closed. The Trustee is one of four standing Chapter 13 Trustees serving this District who has been appointed by the United States Trustee. Among the various duties of Chapter 13 Trustees are those mandated by 11 U.S.C. § 1302(b)(1) which incorporates by reference many of the duties specified in 11 U.S.C. § 704, including but not limited to, investigating the financial affairs of debtors (§ 704(a)(4)); examining proofs of claims and objecting to the allowance of any claim that is improper (§ 704(a)(5)); and furnishing information concerning an estate and the estate's administration to a party in interest if so requested (§ 704(a)(7)). The irregularity discovered in the *Olsen* case regarding an altered payoff letter by Ms. Castagnoli understandably prompted the further examination and review of other cases handled by Ms. Castagnoli involving refinancings by Chapter 13 debtors. The unauthorized fees paid to and concealed by Ms. Castagnoli are claims she asserted against the Debtors under 11 U.S.C. §§ 101(5), 503(b)(2), and 330(a)(4)(B). Pursuant to § 1302(b)(1), the Trustee can rightfully object to excessive fees and report the facts found to both the United States Trustee, who oversees the Trustee in all his cases, and the Court, who oversees its docket and the pending cases thereon for the benefit of the debtors, creditors, and other parties in interest seeking relief under the Bankruptcy Code. As Judge Lundin aptly noted in his seminal treatise on Chapter 13 bankruptcy practice: "[t]he standing trustee is the focal point of Chapter 13 practice in most jurisdictions . . . . The trustee in a Chapter 13 case works with everyone and for no one." 1 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 58.1, at 58-1 (3d ed. 2000 & Supp. 2006).

In short, the Trustee is a fiduciary owing duties to all parties in interest in a Chapter 13 case. His actions taken in these matters in discovering the egregious conduct of Ms. Castagnoli

-18-

fall within the penumbra of the above mandated statutory duties imposed upon him. The Court

commends, not criticizes the Trustee for his forensic discovery. Ms. Castagnoli's condemnable

conduct strikes at the heart of the integrity and transparency of the bankruptcy system and the fee

application process in particular.

The Court also rejects the argument that the revesting of the estates in the Debtors upon

confirmation under 11 U.S.C. § 1327(b) somehow insulates Ms. Castagnoli's challenged fees

from inquiry and disgorgement under § 329. Ms. Castagnoli has not cited any authority for such

proposition in the text of the Code or any judicial or legislative gloss construing same.

Perfunctory and undeveloped arguments and arguments that are unsupported by pertinent

authority are waived. *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000). The Court

does not have a duty to research and construct legal arguments available to a party. *See Head

Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir.

1995). Moreover, a litigant who fails to support a request with pertinent authority forfeits that

request. *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1991). The Court notes

that Bankruptcy Rule 2017(b) subjects to the Court's review all payments, or any agreements to

pay, by the Debtors to Ms. Castagnoli for services in any way related to the cases. *See* 3

LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 329.03[1][c], at 329-10 (15th ed. rev. 2007).

Lastly, there is no evidence in the record to support the defense of laches argued by Ms.

Castagnoli. The instant motions were filed within months after the Trustee learned of Ms.

Castagnoli's reprehensible actions. Thus, there has been no unwarranted delay by the Trustee or

the Court. The only delays were occasioned by Ms. Castagnoli's request for time to plead and her

unsuccessful efforts to delay and continue the trial. She has had due process of law. No real

-19-

prejudice has been established by Ms. Castagnoli; she has had the use, since the closings of the refinance transactions, of the ill-gotten gains she bilked from the Debtors. Indeed, the Debtors suffered prejudice from the loss of the money they borrowed and unknowingly and unwittingly paid to Ms. Castagnoli.

**F.     Whether the Trustee is Entitled to Fees and Costs**

The evidence adduced at trial calls for consideration of assessment of reasonable attorney's fees and taxable costs incurred by the Trustee in connection with these matters. "Upon a finding of civil contempt, a court may, at its discretion, order reimbursement of the complainant, as part of the civil relief, of the party's fees and expenses incurred in bringing the violation to the court's attention." *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981). It is within the trial court's discretion to award fees upon a finding of civil contempt. *Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005).

The Court finds that the Trustee is entitled to his taxable costs and reasonable attorney's fees incurred in pursuing these motions. The Trustee shall submit applications for his fees and costs within thirty days hereof. Ms. Castagnoli may file any objections thereto within fourteen days thereafter. The Court will thereafter set a status hearing on the Trustee's requested costs and attorney's fees as well as the Trustee's request for the imposition of fines upon Ms. Castagnoli.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, the Court grants the Trustee's motions in part and overrules the objections asserted by Ms. Castagnoli. The Court finds that Ms. Castagnoli received excessive and unauthorized fees in the cases of Kimberle A. Andreas and Irene Cegin in the sums

-20-

of $3,500.00 and $5,262.21, respectively. The Court orders those amounts disgorged by Ms. Castagnoli and repaid forthwith to the Debtors. The Court further finds Ms. Castagnoli in civil contempt of the Court's orders allowing Ms. Castagnoli fees of only $2,700.00 in each case. In addition, the Trustee shall be awarded his taxable costs and reasonable attorney's fees. The Trustee shall submit applications for these fees and costs within thirty days hereof. Ms. Castagnoli may file any objections thereto within fourteen days thereafter. The Court will thereafter set a status hearing on the requested costs and attorney's fees as well as the Trustee's request for the imposition of fines upon Ms. Castagnoli.

As a result of Ms. Castagnoli's misconduct found here, the Court refers these matters to the United States Attorney for the Northern District of Illinois pursuant to 18 U.S.C. § 3057, to the Chief Judge of the United States District Court for the Northern District of Illinois pursuant to LR83.28 of the Local Rules of the United States District Court for the Northern District of Illinois for referral to the Executive Committee, and to the Attorney Registration and Disciplinary Commission of the Supreme Court of the State of Illinois pursuant to Illinois Supreme Court Rule 751 *et seq.* for such disciplinary action and further investigation as they deem appropriate.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

ENTERED:

DATE: _8/27/1_

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Irene Cegin
### Bankruptcy No. 04 B 37642

Carolyn A. Suzzi, Esq.
Office of Glenn B. Stearns
Chapter 13 Standing Trustee
4343 Commerce Court, Suite 120
Lisle, IL 60532

Glenn B. Stearns
Chapter 13 Standing Trustee
4343 Commerce Court
Suite 120
Lisle, IL 60532

Ronald J. Broida, Esq.
Joseph K. Nichele, Esq.
1250 E. Diehl Road, Suite 108
Naperville, IL 60563

Patrick J. Fitzgerald, U.S. Attorney
United States Attorney's Office
219 S. Dearborn St., 5th Floor
Chicago, IL 60604

Chief Judge James F. Holderman, Jr.
United States District Court
219 S. Dearborn St., Room 2548
Chicago, IL 60604

James J. Grogan, Esq.
Attorney Registration & Disciplinary
Commission - Suite 1500
One Prudential Plaza, 130 E. Randolph Dr.
Chicago, IL 60601-6207

Irene Cegin
523 Hazelton
Wheaton, IL 60187

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

Irene Cegin
1502 Seven Pines Road
Schaumburg, IL 60193